IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**CONRAAD L. HOEVER,**

    Plaintiff,

vs.                                   Case No. 4:13cv372-WS/CAS

**P. BELLELIS, et al.,**

    Defendants.

_____/

## SECOND REPORT AND RECOMMENDATION

Previously, the seven named Defendants filed a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted pursuant to FED. R. CIV. P. 12(b)(6).  ECF No. 35.  A Report and Recommendation, ECF No. 45, was entered recommending the motion to dismiss be granted as to all claims except Plaintiff's First Amendment claim for free speech and the free exercise of religion against Defendant Kriss in her individual capacity only, and limited to nominal damages.  It was also recommended that Plaintiff be provided an opportunity to submit an amended complaint if he could provide facts in support of his access to courts claim.  ECF No. 45.  The Report and Recommendation was

adopted, ECF No. 49, and Plaintiff filed a first amended complaint.  ECF No. 53.  Defendant Kriss filed an answer, ECF No. 54, and discovery was opened.  ECF No. 55.  At the conclusion of the discovery period, Defendant Kriss filed a motion for summary judgment.  ECF No. 68.  Plaintiff filed an amended response in opposition to summary judgment.  ECF No. 71.[1]  The motion is now ready for a ruling.

**Allegations of the Amended Complaint, ECF No. 53**

Plaintiff did not include allegations concerning the denial of access to courts.  He alleged that on March 16, 2013, Defendant Kriss inventoried his property when Plaintiff was placed in confinement.  ECF No. 53 at 11.  Defendant Kriss put all his religious materials in storage except for a Spanish Bible.  Plaintiff requested "his daily devotionals" and his English Bible and told Defendant Kriss he did not know Spanish enough to use the Spanish Bible.  Defendant Kriss told Plaintiff she was not going to come back and would not bring him anything.  Plaintiff alleged that he spent twenty-six days in confinement and was unable to practice his religion.  *Id.*

---

[1] Plaintiff was given leave to file an amended response because his initial response, ECF No. 69, was filed before an Order was entered advising him of his obligation in opposing a summary judgment motion under Rule 56.  ECF No. 70.  The Order pointed out that Plaintiff's initial response improperly combined argument within his statement of facts and did not clearly indicate the facts Plaintiff believed were supported by the evidence.

He claims Defendant Kriss violated his First Amendment right to freely exercise his religion.  *Id.* at 12.

## I.     Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show[2] though affidavits or other Rule 56 evidence "that there is a

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen

Case No. 4:13cv372-WS/CAS

genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

---

v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Case No. 4:13cv372-WS/CAS

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct. at 2578 (noting the distinction "between evidence of disputed facts and disputed matters of professional judgment."),[3] but "only if there is a

---

[3] Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

## II.   The Rule 56(e) Evidence[4]

Defendant Kriss was employed by the Florida Department of Corrections and assigned to Franklin Correctional Institution on March 16, 2013.  Ex. A at 1 (ECF No. 68-1).  On that day, Sergeant Kelley asked Defendant Kriss "to assist with inventorying" Plaintiff's property because he was being placed in confinement.  *Id.*  Defendant Kriss "inventoried his property and provided him with a bible as indicated on" the property sheet.  *Id.* (citing to Ex. B (ECF No. 68-3).[5]  Defendant Kriss declares that Plaintiff

---

[4] For purposes of this summary judgment motion, Plaintiff states that he "agrees" with, and "adopts," the factual allegations as stated by Defendant Kriss.  ECF No. 71 at 2.  Notwithstanding that assertion, it is apparent that Plaintiff seeks to clarify those factual allegations with his own evidence.

[5] Plaintiff presented Defendant's initial response to his first set of Interrogatories in which Defendant Kriss said: "I do not recall if I inventoried inmate Hoever's property." ECF No. 71 at 17.  An updated response was also provided, however, in which Defendant Kriss said that Sergeant Kelley was the Lead Sergeant and asked her to assist in inventorying Plaintiff's property.  ECF No. 71 at 29.  Defendant Kriss also indicated that Officer Serrato was involved in "doing the inventory."  *Id.*

"signed for his property and did not tell [her] that he needed another bible." *Id.* at 2.

Exhibit B is the Inmate Impounded Personal Property List. ECF No. 68-2. It shows the property that Plaintiff was allowed to keep designated with "k." *Id.* Property placed in storage was designated with an "s." *Id.* Plaintiff was permitted to keep the following items: canteen, Ivory soap, soap dish, "Holy bible," glasses, 1 earphone, shower slides, deodorant, Colgate toothpaste, a toothbrush holder, and an address book. *Id.* Items placed in storage were: blue canteen bag, New Balance shoes, mirror, thermal top, bowl, raincoat, knee brace, 2 cups, 1 coffee cup, "combo lock," Colgate toothpaste, Chapstick, lotion, 5 shirts, 7 socks, 5 books, 21 photos, 1 photo album, legal mail, and personal mail. *Id.*

During Plaintiff's deposition, he stated that during his 26 days in confinement, he was able to pray but could not read the bible. Ex. C (ECF No. 68-3). He said he could "quote some verses [he] remembered and kind of prayed." *Id.* He could not do his daily devotionals until he got out of confinement. *Id.*

Plaintiff submitted his own affidavit in which he states that Defendant Kriss inventoried his property and wrote on the property slip that he was provided a Holy Bible. Plaintiff's Ex. PR.4 (ECF No. 71 at 35). Plaintiff

said that what he was provided was "a Spanish Bible 'Santa Biblia.'" *Id.* Plaintiff says he "did not know Spanish well enough such that the Spanish Bible could function as an English Bible would" for him. *Id.* Plaintiff says he "told Officer Kriss about the discrepancy, and [he] told her that [he] needed one of the English Bibles (three (3)) [he] had in [his] property and [his] daily devotionals which were one 'Upper room' and one 'Faith-to-Faith.'" *Id.* Plaintiff said that Officer Kriss told him, "I'm not coming back! Sign here [and] let me go!" *Id.* Plaintiff said he was afraid that if he did not sign as directed, she would give him a disciplinary report for not following her order. *Id.* He says that he signed the property slip where she pointed for him to sign and Defendant Kriss walked away." *Id.*

Plaintiff said he filed a grievance about that incident at his "first possible chance" on March 19, 2013. ECF No. 71 at 35-36. Plaintiff said that reading his "daily devotional and the Bible texts that go along with that devotional is [his] spiritual food that" he practices daily. *Id.* at 36. He asserts that he is "obligated by [his] religion to do so on a daily basis." *Id.* He also states that not practicing his religion "and not reading [his] Bible and [his] daily devotionals imposes a substantial burden on [his] religious right." *Id.*

Defendant Kriss presented the copy of Plaintiff's grievances on this issue. Ex. D (ECF No. 68-4). Plaintiff submitted an informal grievance on March 19, 2013, and it was denied on March 22, 2013. *Id.* at 5. Plaintiff received that denial on March 23rd or 25th.[6] *Id.* Plaintiff submitted a formal grievance which was also denied. *Id.* at 3-4. He received that denial on April 24, 2013, and then filed an appeal to the Secretary on April 30, 2013. *Id.* at 2-3. His appeal was approved. *Id.* at 1. That approval came after Plaintiff was released from confinement and had received his materials. ECF No. 71 at 36.

## III. Analysis of First Amendment claim

Plaintiff alleged his First Amendment rights were violated by Defendants Kriss because she did not provide Plaintiff with an English Bible and his devotional materials while he was in confinement. He brought this as a First Amendment claim and not under the Religious Land Use and Institutionalized Persons Act (RLUIPA).[7]

Defendant contends that Plaintiff was not substantially burdened but experienced only an inconsequential burden on his ability to practice his

---

[6] The date stamp is not legible.

[7] To the degree Defendant Kriss argues "Plaintiff cannot establish a prima facie case under RLUIPA," ECF No. 68 at 6, that argument is not on point because Plaintiff did not bring his claim under RLUIPA but under the First Amendment.

Case No. 4:13cv372-WS/CAS

religion.  ECF No. 68 at 6-11.  Defendant argues that "[a]t most, Plaintiff was inconvenienced."  *Id.* at 11. Defendant notes that "Plaintiff's materials were returned to him afer he was released from confinement in 26 days." *Id.* at 10.  Defendant also argues that Plaintiff was not compelled "to engage in conduct that his religion forbids," and was "not pressured to modify his behavior or violate his beliefs."  *Id.*  Defendant points out that Plaintiff had alternative means to exercise his religious beliefs because he "was able to pray and he could recite bible verses while in confinement." *Id.* at 10-11.  Finally, Defendant contends she is entitled to qualified immunity.  *Id.* at 11-12.

The First Amendment,[8] made applicable to the States through the Fourteenth Amendment, protects the free exercise of one's religion.  See <u>Cruz v. Beto</u>, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam).  "Despite their incarceration, inmates must be afforded a 'reasonable opportunity' to exercise their religious freedom." <u>Cruz v. Beto</u>, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (cited in <u>Clark v. Florida</u>, No. 2:12-CV-461-FTM-29, 2012 WL 4513056, at *2 (M.D. Fla. Oct.

---

[8] The First Amendment of the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. CONST. Amend. I.

2, 2012).  Inmates retain those First Amendment rights not incompatible with prison life.  <u>Pell v. Procunier</u>, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); <u>Bell v. Wolfish</u>, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979).  Some rights must necessarily be limited by incarceration, <u>Price v. Johnston</u>, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948), but inmates "clearly retain protections afforded by the First Amendment, <u>Pell v. Procunier</u>, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), including its directive that no law shall prohibit the free exercise of religion." <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987) (citing <u>Cruz v. Beto</u>, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam)).

Recent cases have expressed that a violation of the right to the free exercise of religious beliefs exists if a plaintiff establishes "that a state actor imposed a 'substantial burden' on his practice of religion." <u>Wilkinson v. GEO Grp., Inc.</u>, 617 F. App'x 915, 917 (11th Cir. 2015) (citing <u>Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater</u>, 2 F.3d 1514, 1549 (11th Cir. 1993)).  The Eleventh Circuit concluded in <u>Wilkinson</u> that a plaintiff "must present evidence that he was coerced to perform conduct that his religion forbids or prevented from performing conduct that his religion requires." 617 F. App'x at 918.  In doing so, the Court cited to

Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004) (concluding that "a 'substantial burden' must place more than an inconvenience on religious exercise"); Cheffer v. Reno, 55 F.3d 1517, 1522 (11th Cir. 1995) (holding that the Access Act does not "substantially burden" appellants religious expression); and Holt v. Hobbs, 135 S. Ct. 853, 135 S.Ct. 853, 859–60, 190 L.Ed.2d 747 (2015) (concluding that the grooming policy prohibiting a ½-inch beard substantially burdened the prisoner's religious exercise).  Wilkinson, 617 F. App'x at 918.  As noted by the court, those cases were not First Amendment challenges brought under § 1983, but First Amendment claims brought under the Religious Land Use and Institutionalized Persons Act, (Midrash and Holt), and its "sister statute, the Religious Freedom Restoration Act" (Cheffer).  617 F. App'x at 918 (noting "the Acts were passed to reinstitute the standard of strict scrutiny in religious liberty cases"); *see also* Holt, 135 S. Ct. at 859.  Those statutes were enacted "to provide very broad protection for religious liberty," Burwell v. Hobby Lobby Stores, Inc., 573 U.S. ––––, ––––, 134 S.Ct. 2751, 2760, 189 L.Ed.2d 675 (2014), and "provide greater protection for religious exercise than is available under the First Amendment." Holt, 135 S. Ct. at 859-60.  Under that more liberal provision, a prisoner is still required to prove that he was "substantially burdened" in the exercise of his religious

beliefs.  *Id.* at 862; *see also* Allah v. Christburg, No. 2:12CV637-WHA, 2015 WL 5023125, at *6 (M.D. Ala. Aug. 18, 2015) (stating "[t]he burden must be substantial and significantly interfere with an inmate's practice of his religious beliefs."); Dobbins v. Cummins, No. 2:08-CV-997-MEF, 2011 WL 2447722, at *6 (M.D. Ala. May 23, 2011) report and recommendation adopted, No. 2:08-CV-997-MEF, 2011 WL 2447713 (M.D. Ala. June 20, 2011) (citing Hernandez v. Commissioner, 490 U.S. 680, 699 (1989) and stating "[t]he burden must be substantial and significantly interfere with an inmate's practice of his religious beliefs.").

"[A] 'substantial burden' must place more than an inconvenience on religious exercise."  Midrash, 366 F.3d at 1227 (quoted in Wilkinson, 617 F. App'x at 918).  In Wilkinson, an inmate's "religious shrine" was destroyed during a search of his cell.  *Id.* at 916.  The inmate's grievance was granted, noting that it should not have been destroyed and the response to the grievance even "offered to reimburse Wilkinson for his loss so that he could replace the items."  *Id.*  The court concluded that "[a]t most, Wilkinson . . . established that he was temporarily deprived of a particular religious devotion."  *Id.* at 918; *see also* Dobbins, 2011 WL 2447722, at *6 (finding that inmate failed to "demonstrate that his temporary inability to attend church services" for 12 days while in the prison's hospital ward did

not "unduly burdened his ability to engage in the free exercise of his religion.").

Here, Plaintiff has presented evidence that he was denied his English version of the Bible and two devotional books for 26 days, although he had his own Spanish Bible and could pray.  This denial of religious materials was of importance to Plaintiff, but the record demonstrates it was of a temporary nature.  Such a denial of religious materials was an inconvenience to Plaintiff, but it has not been shown to have significantly burdened the exercise of his religious beliefs.  On these facts, the Court is unable to find that Plaintiff was substantially burdened.  Accordingly, summary judgment should be granted in favor of Defendant Kriss.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the motion for summary judgment, ECF No. 68, be **GRANTED** and judgment entered in favor of Defendant Kriss.

**IN CHAMBERS** at Tallahassee, Florida, on February 24, 2016.

 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Case No. 4:13cv372-WS/CAS

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**